Cauk, J.
It appears hy the record, that there were but eleven jurors sworn. Tt was suggested by the appellee’s counsel, that this might be an error of the clerk in transferring the proceedings from his minute book to the order book. Whatever power this fact might give the court below to correct the entry in the order book, I presume it gives to this court no power on that subject. For this error, therefore, the judgement must be reversed, and the cause sent back.
But there was another point argued, that presented by the bill of exceptions to the instruction given by the circuit court to the jury; and as that point will again arise in the trial there, it may not be amiss to give our ideas upon it. It was, indeed, the only point which the appeal was intended to bring up. The attempt was to set off in this action, the price of a parcel of corn, not delivered according to contract by Coleman the obligee, which formed a part of the consideration of the bond on which the action was brought; in other words, (as it seems to me) to deduct the price of the corn from the bond, that part of the consideration having failed. This, I think, was inadmissible, upon the principle that one cannot at law, inquire into the consideration of a bond, in a case like this. Suppose the whole consideration had been corn, could the defendants have defeated the action by shewing a non-delivery ? Here were two contracts. Mrs. Coleman gave her bond to pay so much money. The obligee bound himself to deliver her so much corn. Each had an action. But her’s was for unliquidated damages, and they can never be set off against a liquidated demand. Besides, the claims were not mutual; not due in the same right. In a suit by Mrs. Christian for non-delivery of corn, the bond could not have been set off. The law is settled on this subject, both by english and american decisions; it is not *82 necessary to refer to them. I think the instruction given to , . , the jury was right.
Cabell and Brooke, J. concurred.
Tucker, P.
The reversal of the judgement is inevitable. The issue was tried by eleven instead of twelve jurors; which is a fatal error. It was suggested, indeed, that the minutes of the court’s proceedings might shew, that there were twelve persons sworn to try the issue, the name of one of whom was omitted by mistake in drawing up the orders. But though the complete records in the county courts are amendable by the minutes, since these last are the act of the court, whereas the full record is the act of the clerk in his office, yet in the circuit courts the minutes are mere memoranda of the clerk, while the orders have the sanction of the court’s authority. They are directed to be drawn up at large in the interval of the court; to be read over at its next sitting, and corrected where correction is necessary; and this for preventing errors in the proceedings. 1 Rev. Code, ch. 69. § 46. p. 237. It would be subversive of the spirit of this provision, to consider the orders thus examined and approved, as subject to be controlled by the loose memoranda of the ministerial officer; and so this court has decided.
With respect to the point appearing in the exceptions, on which the opinion of the court is desired, I have no doubt, that the set-off was properly rejected, though, perhaps, for reasons different from that which seems to have prevailed with 'the court below. . 1st, The action was a joint action against two, and the set-off attempted was the individual demand of one of the defendants against the obligee. It is vain and useless to speculate now upon the reasonableness of permitting or refusing such a set-off: it has been too frequently settled by the practice of the courts, that such a set-off is not allowable, for the court now to act upon a different principle. Ritchie Wales v. Moore, 5 Munf. 388. *83 Porter v. Nekervis, 4 Rand. 459. It is of very little im- . , portance, whether a defendant shall be permitted to make his discount or be driven to his cross action: but it is of • ci i,, vital importance, that the practice of the courts should not be in a state of continual fluctuation. If it were necessary to do more than to entrench ourselves behind the numerous authorities on the subject, perhaps, it might not be difficult to shew, that the courts could not have extended the doctrine of set-off farther than they have done, without subjecting themselves to the just imputation of judicial legislation. It might, moreover, be possible to shew, that justice and convenience conspired to impose a limit upon the power of introducing a variety of litigations into the same action. But l content myself with resting upon the authorities just cited, as conclusive of the point. 2ndly, The discount offered in this case, would have conflicted with an established rule. A demand for unliquidated damages cannot be set off against an ascertained demand, nor can cross demands for unliquidated damages be set off against each other. Howlet v. Strickland, 1 Cowp. 56. Weigall v. Waters, 6 T. R. 488. What then, is the nature of the defendant’s demand in this case? It arises out of a breach of a contract to deliver a quantity of corn. She has paid no money and there is none therefore for her to recover back. Her only remedy, in case the plaintiff gets a judgement on her bond, is to sue Coleman for damages for failing to deliver the corn, in which she would recover not the contract price, but the value of the article at the time it should have been delivered, with interest. Bull v. Douglass, 4 Munf. 303. Merryman v. Criddle, Id. 542. Douglass & al. v. M'Allister, 3 Cranch, 298. Gainsford v. Carroll, 2 Barn. & Cress. 624. 9 Com. Law Rep. 204. This, then, is strictly a demand for unliquidated damages, and therefore not a proper set-off. I am not inattentive to the principle, that if the vendor of an article to be delivered at a future day under a parol contract, fails to fulfil his engagement, the buyer may disaffirm the contract, and if he has paid his money *84 may recover it back on a general count of indebitatus assumpsit. For, in such case the breach by one party, and the disaffirmance by the other, put an end to the contract. It is no longer an open and subsisting contract (upon which general indebitatus assumpsit will not lie) but the express contract is at an end, and the implied obligation to refund the price springs up from the transaction. But this doctrine, I take it, can have no application, where the contract to pay is evidenced by deed. In such case, the buyer can neither disaffirm the contract, nor plead that the consideration has failed. Thus, if one give his bond for 500 dollars to another (100 barrels of flour to be delivered at new year’s day, being the actual consideration, though not expressed so to be) the obligor cannot disaffirm the contract upon the failure of the obligee to deliver the flour. His only remedy at law is, to submit to a judgement on the bond, and commence his action for damages. The measure of the damages, in case the price be not paid, would be the difference between the contract price and the market price at new year, when the flour should have been delivered. Gainsford v. Carroll. But when the price has been paid, or the vendor has a judgement for it, the measure of-damages is the whole value of the article at the time fixed for the delivery. Such is precisely the case here. The defendant bought corn of Coleman, and gave her bond for the price. She cannot vacate her bond by alleging the failure to deliver the corn, but she must resort to her cross action, to recover damages for the non-delivery. This, then, is strictly a right to unliquidated, and indeed very uncertain damages; depending upon the fluctuating value of corn in our market. In every aspect of the case, therefore, I think the set-off was properly rejected.